975 So.2d 641 (2007)
Stella CALLIS
v.
JEFFERSON PARISH HOSPITAL SERVICE, DISTRICT # 1 d/b/a West Jefferson Medical Center and/or West Jefferson General Hospital, Laboratory Corporation of America and ABC Insurance Company and XYZ Insurance Company.
No. 07-CA-580.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*642 Salvador G. Longoria, Michele Gaudin, Gaudin & Longoria, Orleans, LA, for Plaintiff/Appellee, Stella Callis.
Edward P. Landry, David Lamm, Landry, Watkins, Repaske & Breaux, New Iberia, LA, for Defendant/Appellant, Laboratory Corporation of America.
Peter J. Butler, T.A., Peter J. Butler, L.L.C., Gretna, LA, and Peter J. Butler, Jr., Michael C. Luquet, Ralph T. Rabalais, Lydia Habliston Toso, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, for Defendant/Appellee, Jefferson Parish Hospital District No. 1, d/b/a West Jefferson Medical Center.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Defendant, Laboratory Corporation of America (LabCorp), appeals the grant of two summary judgments in this slip and fall case. The first one was granted in favor of co-defendant and third-party plaintiff, West Jefferson Medical Center (WJMC), and against LabCorp and plaintiff, Stella Callis. The second was granted in favor of plaintiff, Stella Callis, against LabCorp on the issue of liability alone. We affirm the grant of summary judgment in favor of WJMC. We reverse the grant of summary judgment in favor of plaintiff, and remand for further proceedings.
According to the pleadings, plaintiff, Stella Callis, visited the LabCorp facility at West Jefferson Medical Center on June 2, 2003 for some blood tests. Plaintiff's petition alleges that she entered the room where the blood was to be taken, took a couple of steps, and slipped on a substantial amount of water on the floor. It was thereafter determined that the water came from an overflowing toilet in the bathroom located inside LabCorp's suite. The overflow was caused by a bottle of "Bully" toilet bowl cleaner, placed in the tank of the toilet that had become wedged between the toilet tank and the floater, causing the toilet to run continuously. It was also determined that there was a mild stoppage in the bowl that contributed to the overflow. Plaintiff sued WJMC, LabCorp, and their respective insurers for her personal injuries.
WJMC filed an Answer and Third Party Demand. In the Third Party Demand, WJMC sought indemnification from LabCorp pursuant to the provision in their lease agreement.
On June 2, 2006, WJMC sought summary judgment against plaintiff and partial summary judgment against LabCorp, arguing that there was no negligence attributable to WJMC, and that LabCorp owed WJMC defense and indemnity under the provisions of their lease. Thereafter, plaintiff filed a Motion for Partial Summary Judgment against LabCorp, adopting the arguments in WJMC's Motion for Summary Judgment against LabCorp. The two motions were heard on January 22, 2007. The trial court granted the *643 plaintiff's Motion for Partial Summary Judgment against LabCorp on liability alone, as well as WJMC's Motion for Summary Judgment against plaintiff and its Motion for Partial Summary Judgment against LabCorp.
Plaintiff does not appeal the grant of WJMC's motion against her. LabCorp appealed both the grant of WJMC's motion and the grant of plaintiff's motion.
As this Court recently stated in Blount v. East Jefferson General Hosp., 04-407 (La.App. 5 Cir. 10/12/04), 887 So.2d 535, 537-538:
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Under the amended version of article 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Id.

Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Whether a particular fact in dispute is material can only be determined in light of the substantive law applicable to the case.
Plaintiff asserts a claim under theories of both negligence and strict liability. Under the negligence standard, a hospital owes a duty to its visitors to exercise reasonable care to keep the premises in a safe condition commensurate with the particular circumstances involved; but the duty owed is less than that owed by a merchant. Under a negligence theory, plaintiff must also prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a theory of strict liability, the hospital is liable for defective things in its custody only upon a showing that it knew or, in the exercise of reasonable care, should have known of the defect which caused the damage and failed to correct it with reasonable diligence.
Thus, under either theory of liability, plaintiff has the burden to prove actual or constructive notice of defendant. In order to maintain a claim for damages caused by the condition of things within the care and custody of a public entity, the complainant has the burden of proving that the public body had actual or constructive notice of the hazard and had a reasonable opportunity to remedy the condition, but failed to do so. La. R.S. 9:2800(B). Constructive notice is defined as "the existence of facts which infer actual knowledge." La.R.S. 9:2800(C). Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. The plaintiff bears the burden at trial of proving actual or constructive notice. (cites omitted.)
LabCorp first argues that the trial court should not have ruled upon plaintiff's Motion for Partial Summary Judgment against LabCorp, as the matter was not *644 before the court for a decision. LabCorp argues that plaintiff's motion was brought under the premise that plaintiff's counsel had not received any opposition from LabCorp that would indicate that it did not have a dispute as to its liability, but if LabCorp did provide an opposition that would create a material issue of fact, then plaintiff would withdraw its motion against LabCorp.
We find that plaintiff's Motion for Partial Summary Judgment was clearly before the court. We reverse, however, because plaintiff did not present any evidence regarding LabCorp's negligence. As the mover and the party who bears the burden of proof at trial, plaintiff, in a Motion for Summary Judgment, bears the burden of proof to show that he is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2).
LabCorp argues that the trial court erred in granting plaintiff's motion because Callis did not provide any evidence in her motion regarding LabCorp's liability. Plaintiff responds that in her motion, she incorporated WJMC's complete Motion for Summary Judgment, its supporting proof, and its Memorandum so that all factual allegations could be heard at one time since the issues were conjoined and related.[1]
Plaintiff argues that the evidence presented in WJMC's motion and incorporated into her motion constituted a prima facie case against LabCorp. We disagree. The evidence presented by WJMC in its motion (which is summarized later in this opinion) establishes the lack of negligence/fault on the part of WJMC. This is not the same thing as presenting evidence of LabCorp's negligence. Accordingly, we must reverse the grant of plaintiff's Motion for Summary Judgment, finding that she did not bear her burden of proof therein.
Next, we consider WJMC's Motion for Summary Judgment. WJMC moved for summary judgment on the main demand of the plaintiff, and partial summary judgment on its third party demand for defense and indemnity against LabCorp. In the Motion, WJMC argued the plaintiff would have to prove that WJMC's negligence caused her accident, and further, that in absence of evidence of negligence on the part of WJMC, it is entitled to a complete defense and indemnity from LabCorp pursuant to the lease with LabCorp.
WJMC's lease with LabCorp provides that housekeeping duties within LabCorp's suite, which included cleaning the toilets, is to be provided by WJMC and is a service for which LabCorp pays WJMC. This lease also provides that lessee, LabCorp, shall indemnify, defend, and save harmless WJMC from and against any and all claims, demands and causes of action for injuries to persons of any nature upon the leased premises, unless such arises from the negligence of the Lessor WJMC.
WJMC presented evidence that the bathroom where the toilet was located was entirely within the suite LabCorp leased, and was not accessible to the general public. It also presented deposition testimony that the Bully product that caused the overflow is not a product used by WJMC, its maintenance department, or its housekeeping subcontractor, and that it had no notice that the toilet in question was overflowing or stopped up prior to plaintiff's accident.
WJMC presented the deposition testimony of five individuals. Latoia Petty, *645 employed by WJMC as Administrative Secretary of the Property Management Department, testified at her deposition that she was the first WJMC employee on the scene. She observed the "Bully" toilet sanitizer in the tank and stated that it was not a product used by either the WJMC maintenance department or their housekeeping contractor. She testified that she looked at the housekeeping contract with Tujay's, which provides that Tujay's does not use any products that color the toilet water. (Bully was described as a product that turns the toilet water blue.) She stated that a LabCorp employee told her that they (LabCorp) use the Bully in connection with urine testing.[2] Petty was unable to name this employee, but described her.
Mr. David Orgeron is a maintenance employee at WJMC. He responded to Petty's call to report to the LabCorp suite. He observed Callis lying on the floor in the puddle of water. He testified that the maintenance department performs repairs, but does not do any cleaning. He stated that no one called him or the maintenance department to report the overflowing toilet prior to the accident. Orgeron testified that he turned the water off to the toilet, pulled off the tank cover, and observed the empty bottle of Bully wedged between the tank and the float. He also testified that the toilet was stopped up with some unknown object that cleared easily when he plunged it. He opined that since the stoppage cleared easily, it was mostly likely caused by toilet tissue, though he did not see it. He stated that he used a wet-vac to clean up the water, which he opined was approximately 25-30 gallons.
Mr. James O'Brien is the owner of Tujay's Janitorial Services, WJMC's housekeeping contractor. He testified in deposition that pursuant to Tujay's contract with WJMC, his company did clean and disinfect the bathrooms in the medical office building, including the bathroom in the LabCorp suite. He stated that he has never used a subcontractor. O'Brien was adamant that his company does not use the Bully product or any type of product in the tank of the toilets.
WJMC presented the deposition testimony of Salvador J. Munfra, director of security at WJMC. He testified that he was called to the scene as a result of the bottle of Bully being found in the tank of the toilet. He testified that the water on the floor was clear, and was "more" than a puddle. He conducted an investigation to find out where the Bully came from, since it was not a product used at WJMC. He contacted O'Brien with Tujay's to find out if they used the product; O'Brien confirmed that they did not, and further stated that it was not available commercially. Munfra called the purchasing department at WJMC to learn if WJMC bought this product, and was told no. In addition, he added that most of the toilets at WJMC do not have tanks.
Additionally, all deponents testified that this bathroom was located entirely within LabCorp's suite and was not accessible by the general public.
In summary, WJMC's evidence established that LabCorp leased this space from WJMC, and that all time pertinent to his accident, LabCorp had control of the suite. The deponents established that this bathroom is not accessible to the general public, but only to LabCorp employees and customers. The testimony was consistent and established that a bottle of Bully toilet sanitizer was wedged between the tank *646 and the float, causing it to run continuously and overflow to the degree that it spread outside of this bathroom into the suite. Bully is not a product used by WJMC maintenance, who does not perform any cleaning of toilets, and is not used by WJMC's housekeeping contractor Tujay's, who does clean and sanitize the bathrooms in this suite. WJMC maintenance department, who was responsible for repairing toilets, was never called by LabCorp to report the overflowing toilet prior to Mrs. Callis's accident.
This evidence supports WJMC's contention that it was not negligent, it did not place the bottle of Bully in the toilet tank, nor did it have actual or constructive notice of the overflowing toilet prior to the accident.
In opposition to both WJMC's and plaintiff's motions, LabCorp submitted the affidavit of Lynn Cotoya, LabCorp's Account Executive. Therein, she attested that she was present at LabCorp's WJMC facility at the time of plaintiff's accident on June 2, 2003. She stated that it is not LabCorp's policy and procedure to use Bully at the WJMC facility because drug screens are not performed at that location, and that "to the best of her knowledge, no employee of LabCorp used "Bully" cleaner at the WJMC facility at the time of this accident." LabCorp also presented the depositions of the same WJMC employees WJMC used to support its motion. LabCorp also attached Answers to Interrogatories. In Answer No. 8, LabCorp states that it is unknown to LabCorp at this time who placed the cleaner (Bully) in the tank. In Answer No. 9, LabCorp stated that it does not use the Bully product. This Answer contrasts with Cotoya's affidavit, which suggests that LabCorp does use this product at other LabCorp facilities where drug screens are performed.
It its opposition to WJMC's Motion for Summary Judgment and on appeal, LabCorp argues that WJMC's evidence in support of the Motion for Summary Judgment does not dispose of the issue of material fact of who put the Bully in the toilet.
WJMC's evidence need not dispose of the issue of exactly who put the Bully in the tank; it need only establish that WJMC was not negligent. The evidence offered by WJMC did establish that no WJMC employee, nor their housekeeping contractor, placed the Bully in the tank. It also established that WJMC had no actual or constructive notice of the overflowing toilet prior to the accident. Accordingly, the trial court did not err in granting judgment in WJMC's favor on both its Motion for Summary Judgment on plaintiff's claim and as to its Motion for Partial Summary Judgment regarding LabCorp's liability to defend and indemnify it.
AFFIRMED IN PART, REVERSED IN PART; REMANDED.
NOTES
[1] The case law is replete with instances of litigants adopting the summary judgment motions of other litigants. See, for example, Ulmer v. Frisard, 06-377 (La.App. 5 Cir. 10/31/06), 945 So.2d 85; Jones v. Gatusso, 00-1654 (La.App. 5 Cir. 2/14/01), 782 So.2d 11.
[2] Apparently the Bully is used to discolor the water blue so that urine tests cannot be falsified using water from the toilet.